IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JORDAN LITKE                                                                   PLAINTIFF

vs.                                                                  No. 1:04CV314-D-D

JOHN C. MORRIS III a/k/a
JAY MORRIS                                                  DEFENDANT

<u>OPINION</u>

This action is brought by the Plaintiff Jordan Litke, who was the high bidder at a home foreclosure sale conducted on July 21, 2004, by the Defendant John Morris, who conducted the sale on behalf of Chase Manhattan Mortgage Corporation, the holder of a Deed of Trust on the subject real property. The Plaintiff seeks specific performance, in the form of requiring the Defendant to issue a deed to the subject property, or repayment of his purchase price plus the funds he has invested in the property, in connection with the Defendant's subsequent rescinding of the subject foreclosure sale. The court conducted a bench trial of this matter on January 17, 2006.

Having carefully considered the testimony and exhibits presented at trial, as well as the parties' post-trial submissions, the court finds that the Plaintiff is entitled to a refund of the purchase price of the property plus the expenses he reasonably incurred in renovating the property for potential resale, but not specific performance or attorney's fees.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the court issues the following findings of fact and conclusions of law.

*A. Factual Background*

In July of 2004, the Defendant ran an ad in the Northeast Mississippi Daily Journal, a Tupelo newspaper, giving notice that a foreclosure sale of real property located at 1276 Rowan Oak Drive

in Tupelo was to be held in Lee County on July 21, 2004. The Plaintiff attended the foreclosure sale and bid $21,001.10 for the property, a sum $1.00 greater than the next highest bid. The Plaintiff then delivered the funds to the Defendant, who cashed and deposited the Plaintiff's check.

Immediately after the sale, the Plaintiff began expending his own funds to renovate the Rowan Oak property, which the parties now stipulate was actually worth $250,000 on the date the foreclosure sale took place. The Plaintiff ultimately spent some $44,722.33 upgrading and renovating the property. On August 12, 2004, three weeks after the sale, the Defendant notified the Plaintiff that the July 21, 2004, foreclosure sale was being rescinded and that title to the property would not be delivered to the Plaintiff because a clerical error that originated in the Defendant's office caused the sale price for the property to be set so low as to be commercially unreasonable. The Plaintiff then filed this action on October 6, 2004.

*B. Discussion*

Under Mississippi law, inadequacy of price is insufficient to set aside a foreclosure sale unless the price is so inadequate as to shock the conscience. Central Financial Services, Inc. v. Spears, 425 So. 2d 403, 404-405 (Miss. 1983). In prior cases, the Mississippi Supreme Court has held that sales prices below 36 to 40 percent of fair value are unconscionable. See, e.g., Haygood v. First National Bank of New Albany, 517 So. 2d 553, 556 (Miss. 1988); Central Financial Services, 425 So. 2d at 405 (36 percent sales amount deemed unconscionable); Federal Land Bank v. Robinson, 134 So. 180 (Miss. 1931) (19 percent); Hesdorffer v. Welsh, 90 So. 3 (Miss. 1921) (eight percent); Weyburn v. Watkins, 44 So. 145 (Miss. 1907) (40 percent).

The sales price in the case *sub judice*, $21,001.10, is equal to 8.4 percent of the stipulated value of the subject property on July 21, 2004 - $250,000. In accordance with the above-cited

authorities, the court finds that the subject sales price is so low as to be unconscionable and commercially unreasonable; thus, specific performance is inappropriate as a remedy. In addition, the Plaintiff admitted during his trial testimony that the low advertised price for the property made him "nervous" because he "was greatly aware of the fact that [he] had purchased the property for a figure that was far less than the value of the house." See Trial Transcript at 14.

While the Plaintiff argues that the parties entered into a valid contract and that specific performance is appropriate, the cases he cites do not involve foreclosure sales of real property, as do the above-denoted cases. Because the above cases are more directly on-point to the situation the court has been presented, the court finds that those cases are more persuasive. In any event, the Plaintiff argues in the alternative that if specific performance is found to be inappropriate, he should be reimbursed for the amount of his bid at the foreclosure sale plus the expenses he incurred in renovating the house. He is being granted this relief as described below.

Because the Defendant stipulated that his office made an error in transmitting the bid figures to the agent that conducted the auction, the court finds that monetary relief is appropriate in order to make the Plaintiff whole. The Plaintiff seeks a refund of the purchase price he paid for the property, $21,001.10, and reimbursement for the funds he expended renovating the property, $44,722.33. At trial, the Plaintiff presented detailed invoices outlining and itemizing the $44,722.33 in expenditures. The court finds the Plaintiff's request for reimbursement of these actual costs reasonable and shall award him these costs. Thus, the Plaintiff is hereby awarded $21,001.10 plus $44,722.33, a total compensatory award of $65,723.43.

As for the Plaintiff's request for attorney's fees, the federal courts of the United States have adopted what has become known as the "American Rule" in the handling of attorney fee requests.

3

Unlike countries which follow the "English Rule," our courts do not routinely assess attorney fees against the losing party. See Aleyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L. Ed. 2d 141 (1975) (holding that, under American rule, each party must bear its own expenses during litigation, and that attorneys' fees are not ordinarily recoverable by prevailing litigant in absence of statutory authorization). The American Rule was recognized by the Supreme Court as early as 1796. Arcambel v. Wiseman, 3 U.S. 306, 1 L. Ed. 613 (1796). The Rule proscribes the award of attorneys' fees absent statutory authorization or particularly compelling circumstances. Rohm & Haas Co. v. Crystal Chem. Co., 736 F.2d 688, 690 (Fed. Cir. 1984). The policy behind the Rule is simple - to avoid penalizing a party "for merely defending or prosecuting a lawsuit." Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L. Ed. 2d 475 (1967).

Here, while the Plaintiff is the prevailing party, he has pointed to no statutory authorization regarding an award of attorney's fees, and the court is not aware of any that apply to this case. In addition, the court does not discern any particularly compelling circumstances that would warrant a departure in this case from the standard American Rule holding that each party should bear its own legal expenses in this case. Thus, the Plaintiff's request for attorney's fees shall be denied.

*C. Conclusion*

In accordance with the above-cited authorities, the court finds that, while the July 21, 2004, foreclosure sale of the property at 1276 Rowan Oak Drive in Tupelo, Mississippi, is being set aside and the Plaintiff is not being awarded title to that property, the court shall award monetary relief to the Plaintiff in the amount of $65,723.43, of which $21,001.10 is the price he paid at the auction to purchase the property, and of which $44,722.33 is the amount of reasonable expenses the Plaintiff

4

incurred in renovating the property.

      A separate order in accordance with this opinion shall issue this day.

      This the 4th day of April 2006.

                                            /s/ Glen H. Davidson
                                            Chief Judge